**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WINTHROP BIGBEE, | : | |
| Petitioner, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | No. 05-2653 |
| GEORGE PATRICK, et al., | : | |
| Respondents. | : | |

**MEMORANDUM AND ORDER**

**Brody, J.**                                                                **August    31 , 2006**

Petitioner Winthrop Bigbee ("Bigbee") petitions this court for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  I referred the petition to the magistrate for a Report and

Recommendation ("R&R") in accordance with 28 U.S.C. § 636(b)(1)(B).  The magistrate's R&R

recommends that I deny the petition as time-barred.  Petitioner filed timely objections.  I agree

with the magistrate's recommendation to deny the petition.  I write separately, however, because

I do not find untimeliness to bar Bigbee's claims, but instead reject them on the merits.


I.       **FACTS AND PROCEDURAL HISTORY**

On April 2, 1998, Bigbee was arrested in connection with the August 25, 1992 death of

Celeste Greenwood ("Greenwood").  Bigbee was charged by the Commonwealth of Pennsylvania

with criminal homicide, first degree murder, second degree murder, third degree murder,

kidnaping, unlawful restraint, false imprisonment, witness intimidation, abuse of corpse, and

tampering with or fabrication of physical evidence.  (Compl. CR-101-98, Chester Co. Ct. of

Com. Pleas.)  On April 24, 1998, the Commonwealth withdrew the witness intimidation charge.

1

(Id.)  On November 19, 1998, the trial court dismissed the charges of kidnaping and false imprisonment.  (Crim. Act. No. 1642-98, Order of 11/19/98, Chester Co. Ct. of Com. Pls.)

On March 9, 1999, the trial court entered a pretrial order that the Commonwealth's pathologist could use the word "homicide," that the Commonwealth could use black and white photographs of Greenwood's decomposed body when it was discovered two months after her death, and that the Commonwealth could introduce evidence of Bigbee's assault of another woman in similar circumstances.  (Crim. Act. No. 1642-98, Order of 3/9/99, Chester Co. Ct. of Com. Pls.)  On March 11, 1999, Bigbee entered an open guilty plea to third degree murder, tampering with physical evidence and abuse of a corpse.  (Tr. 3/11/99 at 2.)  The remaining counts were withdrawn.  (Id. at 6.)  The trial court instructed Bigbee that he would face a maximum of 24 years in prison on all three counts together, and Bigbee said that he understood.  (Id. at 4.)

The court then engaged in the following guilty plea colloquy with Bigbee:

THE COURT:     Now, you understand, also, Mr. Bigbee, that you may go to trial.  You don't have to plead guilty.  You may go to trial and require the Commonwealth to prove its case against you, and if you were to go to trial, you would have all the trial rights that are set forth in this guilty plea colloquy.

Do you understand that?

THE DEFENDANT:   Yes, sir.

THE COURT:     You have been over these with Ms. Steinen?

THE DEFENDANT:   Yes, sir.

THE COURT:     Do you understand the rights that you're giving up?

THE DEFENDANT:   Yes, sir.

> THE COURT:      By the way, in looking through your colloquy, I see here that you have been hospitalized for drug rehabilitation and depression.  Are you under any medications here today?
>
> THE DEFENDANT: Not today, sir.

(Id. at 6-7.)  The court then told Bigbee that by pleading guilty his right to appeal would be limited to certain grounds.  (Id. at 7.)  The court asked "Do you understand that limitation on what you would be able to complain of on appeal?" and Bigbee answered "Yes, sir." (Id. at 7-8.)

The rest of the colloquy went as follows:

> THE COURT:      All right.  Mr. Bigbee, other than anything I might have said here today, has anybody made any promises to you or used any force or threats against you in order to get you to plead guilty?
>
> THE DEFENDANT:  No, sir.
>
> THE COURT:      Have you had a full opportunity to discuss this matter with Ms. Steinen?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:      Are you satisfied with her advice and representation?
>
> THE DEFENDANT:  Oh, yes, sir.
>
> THE COURT:      All right, sir, is there anything else you would like to say to me or any questions you have of me about any part of this procedure, before I rule on whether or not to accept your plea?
>
> MS. STEINEN:  It's just whether or not he should accept your plea.  If there's any questions you have about what you're doing here, now is your chance to ask him.
>
> THE COURT:      Perhaps, I should explain to you as well, Mr. Bigbee, that you will be brought back at some future time for the imposition of sentence.  At that time I will allow you to say whatever you would like to say about what you think the sentence ought to be.  There's other things that I will let you do at that point.  Right now I'm just, I just want to know whether your plea is being entered knowingly and voluntarily.

3

> Do you have any questions about what you're doing, or the effect of the plea of which you're entering, before I go ahead and accept it?

THE DEFENDANT:   I'm pretty clear from Mrs. Steinen.

THE COURT:   All right.  Fine.  I will accept your plea now [. . .]

(Id. at 8-9.)  The same day, Bigbee had initialed every paragraph and signed every page of a written guilty plea colloquy, including a description of Murder in the Third Degree as "A killing done with legal malice but without specific intent to kill."  (Resp.'s Ans. to Pet. for Hab. Corp. App. D.)

On May 18, 1999, Bigbee filed a motion to withdraw his guilty plea to the charges of tampering with physical evidence and abuse of a corpse.  He argued that his guilty plea to those charges had not been knowing, voluntary and intelligent because the statute of limitations for them had expired.  (Def.'s Mot. to Withdraw Guilty Plea, Chester Co. Ct. of Comm. Pls. No. 1692-98.)  The Commonwealth did not oppose the motion, and Bigbee was sentenced only for third degree murder.  On May 21, 1999, Bigbee was sentenced.  At the sentencing hearing, Bigbee addressed the court and Greenwood's family, repeatedly referring to her death as "unintentional."  In response, the court questioned Bigbee again about his plea:

THE COURT:   Mr. Bigbee, I just want to be sure we're clear here.  You have offered a plea of guilty to third degree murder.

THE DEFENDANT:   Yes, sir.

THE COURT:   But in shorthand, that's a killing with malice.  And it's not an unintentional killing, and it's not a killing in self-defense.  Do you understand –

THE DEFENDANT:   Now, I do.

THE COURT:   —what you pleaded guilty to?

4

MS. STEINEN:   Did you understand that at the time you pled guilty?

THE DEFENDANT:   Yeah, I guess.

THE COURT:   Frankly, you're going to have a lot of time here to think back on these events, and sometime down the line, I don't want you sending in a paper saying I didn't understand what I was doing, or I pleaded guilty to one thing, but I really meant another thing.

You've offered a plea of guilty to murder in the third degree, which is a killing with malice.  I've accepted that plea with the understanding that that was what you were doing and what you were acknowledging when you made the plea.  Am I mistaken in that?

THE DEFENDANT:   I guess that's what I have to do.  I didn't want you to think that it was something that I struck out to do.

THE COURT:   Well the law is –

THE DEFENDANT:   I don't know if I explained it right.

THE COURT:   What you've pleaded guilty to does not require that you planned it ahead of time, but it does mean at the time you did it, you acted with malice, which is a legal term meaning hardness of heart, recklessness of consequences, that sort of thing.  That's what you're acknowledging.

THE DEFENDANT:   Oh, okay.

THE COURT:   Am I correct in assuming that's what you're acknowledging?

THE DEFENDANT:   That's what the charges are.  That's what I pled to.

(Tr. 5/21/99 at 16-17.)  Bigbee was sentenced to eight to twenty years in prison.  (Id. at 21.)

The trial court told Bigbee that he had ten days in which to file post-sentence motions, or thirty days in which to file a notice of appeal.  (Id. at 22.)  He did not file either, and the judgment of sentence became final on June 20, 1999.

On February 29, 2000, Bigbee filed a pro se Application to File Appeal Nunc Pro Tunc, which the trial court treated as a petition for relief pursuant to Pennsylvania's Post Conviction

Relief Act ("PCRA"), 42 Pa. C.S. § 9541 et seq..  Counsel was appointed for Bigbee, and his amended PCRA petition, filed April 3, 2002,[1] claimed two grounds for relief:

(1)  failure of trial counsel to perfect Bigbee's right to an appeal deprived him of effective assistance of counsel under the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 9 of the Pennsylvania Constitution.

(2)  Bigbee's guilty plea is invalid because he maintained that it was an accident and was not aware that he could raise a defense of lack of malice, which would qualify him for voluntary manslaughter instead of third degree murder.[2]

(Commonwealth v. Bigbee, No. 1642-98, Amend. Pet. for Postconviction Relief. (Apr. 3, 2002).)

A hearing was held on Bigbee's PCRA petition on October 1, 2002.  Bigbee testified that he had entered a guilty plea to third degree murder because his counsel "told me if I took it to trial, that I could possibly be found guilty of first and second degree murder and that would constitute maybe my life, you know.  And I got two kids, so, you know."  (Tr. 10/1/02 at 10.) Bigbee testified that his trial counsel did not explain to him what a voluntary manslaughter

---

[1] According to the Superior Court opinion affirming the dismissal of Bigbee's PCRA petition, the delay was caused by a series of intervening events:

Appellant [Bigbee] mailed a *pro se* petition for relief pursuant to the PCRA from prison on February 29, 2000.  The court received the petition on March 14, 2000.  On March 23, 2001, Appellant filed another *pro se* PCRA petition, seeking appointment of counsel.  On March 29, 2001, the court appointed Thane C.J. Trotman, Esquire to represent Appellant. On April 9, 2001, the Commonwealth filed a motion to dismiss Appellant's PCRA petition of March 23, 2001, asserting that it was untimely.  On April 24, 2001, Attorney Trotman filed a petition for leave to withdraw as counsel.  On May 10, 2001, the court permitted Attorney Trotman to withdraw from the case.  On November 1, 2001, new counsel entered her appearance for Appellant.  Counsel filed an amended PCRA petition on April 3, 2002.

(Commonwealth v. Bigbee, No. 3454 EDA 2002, Resp.'s Ans. to Pet. for Writ of Hab. Corp. App. M at 4-5.)

[2] Although Bigbee's second claim was not explicitly framed as an ineffective assistance claim, it implicates Bigbee's assistance of counsel, and was appealed to the Superior Court as an ineffective assistance claim.

charge would mean, nor what imperfect self-defense was.  (Id.)  On cross-examination, he

admitted initialing the paragraphs in the written plea colloquy that stated that "my lawyer has

explained to me the elements to the offenses to which I'm pleading guilty" and "I admit

committing the crimes to which I am pleading guilty."  (Id. at 13.)

The trial court then asked Bigbee what he thought he was pleading guilty to when he

entered his plea.  He said he thought it meant "that it was like somehow my fault, not like, you

know, done by me viciously, but it was somehow my fault that Ms. Greenwood's death was

caused."  (Id. at 15.)  Bigbee testified that he didn't know that if he took the case to trial the jury

could have found him guilty of a lesser degree of homicide.  (Id. at 22.)

Next, Bigbee's trial counsel testified that she had counseled Bigbee on the evidence the

trial court had ruled admissible in the case, including his "subsequent aggravated assault

conviction against a different drug prostitute" and "a neighbor who had a vivid memory of

hearing screaming out in the road that stopped abruptly . . . right around the time of this

homicide."  (Id. at 28-30.)  She testified that she and Bigbee had decided that a third degree

murder plea was in Bigbee's best interests because they were "not feeling confident that

voluntary manslaughter was any more likely than first degree murder."  (Id. at 28.)  She also

testified that she had discussed imperfect self-defense and voluntary manslaughter with Bigbee.

(Id. at 30.)  She told Bigbee that she "believed a jury could find a specific intent to kill" based on

the evidence.  (Id. at 38.)  On questioning by the Judge, she also stated that she advised Bigbee to

plead guilty because she "both believed that it was in his best interests and [she] also believed

that he was guilty of third degree murder."  (Id. at 43.)

On October 22, 2002, the PCRA court denied Bigbee's petition.  (Mem. Op. of 10/22/02,

Resp.'s Ans. to Pet. for Writ of Hab. Corp. App. J.)  The court found that although Bigbee denied

both intent and malice, it did not indicate an unknowing plea because Bigbee "underst[ood] the

law in relation to the particular facts of his case."  (Id. at 2.)  Bigbee filed a timely appeal of that

decision to the Superior Court on November 14, 2002, arguing that

> Winthrop Bigbee received ineffective assistance of counsel when he was advised to plead
> guilty to third degree murder in a case in which he has consistently maintained that the
> death of Celeste Greenwood was an accident and occurred during a struggle over a knife.

(Brief for Appellant, No. 3453 EDA 2002, Resp.'s Ans. to Pet. for Writ of Hab. Corp. App. K.)

After filing the brief, Bigbee's counsel was replaced by Thomas Naughton, Esq.  On September

10, 2003, the Superior Court affirmed the denial, noting that "the transcript of the guilty plea

hearing demonstrates that Appellant understood the nature of the charges to which he pleaded

guilty and that there was a factual basis for the plea."  (Commonwealth v. Bigbee, No. 3454 EDA

2002, Resp.'s Ans. to Pet. for Writ of Hab. Corp. App. M at 13.)

The Superior Court replaced Bigbee's counsel again on September 30, 2003.  (Pet. for

Leave to File Pet. for Allow. of App. Nunc Pro Tunc. at 2, Comm. v. Bigbee, 302 MT 2004.)

His new counsel, Thomas J. Wagner, Esq., ("Wagner") received the appointment order with a

document entitled "P.C.R.A. Status Report" indicating that the case was "awaiting a decision by

the Superior Court of Penna."  (Id.)  When the file was provided to Wagner, there was no copy of

the Superior Court opinion in it.  (Id.)  According to Bigbee, Wagner found out on May 13, 2004

at the earliest that the Superior Court had decided the case on September 10, 2003.  (Id. at 3.)

After Wagner sent Bigbee a copy of the Superior Court opinion obtained from the District

Attorney's office, Bigbee wrote to Wagner on May 21, 2004 instructing him to file a petition for

allowance of appeal nunc pro tunc.  (Id.)

8

On June 10, 2004, through his counsel, Bigbee filed a Petition for Allowance of Appeal Nunc Pro Tunc with the Supreme Court of Pennsylvania.  The Office of the Prothonotary advised Wagner that he needed to file a Petition for Leave to File a Petition for Allowance of Appeal Nunc Pro Tunc.  (Pa. S. Ct. Letter to Thomas J. Wagner (June 11, 2004), Resp.'s Ans. to Pet. for Writ of Hab. Corp. App. N.)  The notice from the Prothonotary instructed counsel as follows:

> The Petition for Leave to File a Petition for Allowance of Appeal Nunc Pro Tunc may be in numbered paragraphs and needs to state, with specificity, the reasons why an appeal was not filed within the thirty day appeal period.  **It is not to go into the merits of the appeal or contain argument as to why allocatur should be granted**.  Only if this Court were to grant leave to file a Petition for Allowance of Appeal Nunc Pro Tunc, would arguments regarding the errors allegedly made below be permitted.

(Id.) (emphasis in original.)  Bigbee's counsel filed the petition (hereinafter "Petition for Leave to File Nunc Pro Tunc"), discussing the confusion generated by the Superior Court's transfer of the case and file, and making only arguments based on timeliness.  On August 24, 2004, the Supreme Court issued a per curiam order, stating in full:

> **AND NOW**, this 24th day of August, 2004, the Petition for Leave to File Petition for Allowance of Appeal Nunc Pro Tunc is granted.  Counsel is directed to file a petition for allowance of appeal within forty-five (45) days of the date of this order.

Comm. v. Bigbee, 101 MM 2004 (Pa. Aug. 24, 2004).  Bigbee filed his Petition for Allowance of Appeal on September 23, 2004, arguing that the lower courts erred in holding that Bigbee received effective assistance of counsel when he entered his guilty plea to third degree murder.  On April 18, 2005, the Pennsylvania Supreme Court issued a per curiam order stating, in full, "**AND NOW**, this 18th day of April, 2005, the Petition for Allowance of Appeal is **DENIED**."  Comm. v. Bigbee, 892 MAL 2004 (582 Pa. 714, 872 A.2d 1197 (2005)).

Bigbee filed the instant petition for writ of habeas corpus on June 3, 2005, claiming two

grounds for relief:

1. Bigbee's guilty plea to third degree murder was not knowingly and intelligently entered because he asserted his innocence and did not understand the meaning of "malice";[3] and

2. Bigbee's trial counsel provided ineffective assistance because she believed that he was guilty.

(Pet. at 9.)  Respondents argue that the federal habeas petition should be dismissed as untimely; that Bigbee's second claim is inexhausted and procedurally defaulted; and that the Pennsylvania courts' determination that Bigbee's guilty plea was knowing, voluntary and intelligent was not contrary to or an unreasonable application of clearly established federal law.

The matter was referred to the magistrate judge for a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B).  After review of the petition, response, and state court record, the magistrate judge recommended on January 31, 2006 that the petition be dismissed as time-barred.  Bigbee filed objections to the R&R on February 8, 2006, arguing that his petition should not be dismissed as time barred because after the Pennsylvania Superior Court misled Bigbee's attorney into thinking that no opinion had been filed in his case, the Pennsylvania Supreme Court granted Bigbee permission to file a petition for allowance of appeal nunc pro tunc.

## II.    DISCUSSION

## A.    <u>AEDPA's Statute of Limitations</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"), there is a

---

[3] I will equate this claim with Bigbee's ineffective assistance claim presented to the Superior Court on the appeal from the PCRA denial by the trial court.

one-year limitations period for federal habeas corpus petitions.  28 U.S.C. § 2244(d).  The period

runs from the date when the judgment becomes final in the state courts.  Id. § 2244(d)(1)(A).

Bigbee's conviction became final on June 20, 1999, when his time to file a notice of appeal ran

out thirty days after he was sentenced.  Bigbee's present federal habeas petition was filed on June

3, 2005, almost six years after his conviction became final.  It can only be reviewed if statutory or

equitable tolling extended Bigbee's time to file.


1.      Statutory Tolling

        AEDPA provides that the "time during which a properly filed application for State post-

conviction or other collateral review with respect to the pertinent judgment or claim is pending"

does not count towards the one-year statute of limitations period.  A petition for collateral review

is "properly filed" if its "delivery and acceptance are in compliance with the state's applicable

laws and rules governing filings," including "time limits upon its delivery." Pace v.

DiGuglielmo, 544 U.S. 408, 413 (2005) (quoting Artuz v. Bennett, 522 U.S. 4, 8 (2000)). When

a state considers a petitioner's postconviction petition untimely under state law, "that [is] the end

of the matter for purposes of § 2244(d)(2)."  Id. at 414 (citations ommitted).

        In this case, the Pennsylvania courts considered Bigbee's PCRA petition filed as of

February 29, 2000, after 254 days of AEDPA's one-year period had elapsed, and within the one

year limit for filing PCRA petitions.  See 42 Pa. C.S. § 9545(b).  The petition was denied on

October 22, 2002, and Bigbee filed a timely appeal to the Superior Court on November 18, 2002.

The Superior Court affirmed the denial on September 10, 2003, leaving Bigbee 30 days in which

to seek allocatur from the Pennsylvania Supreme Court.  See Pa. R.A.P. 1112.  There is no

question that Bigbee is entitled to statutory tolling for the entire period from February 29, 2000,

through October 10, 2003.  The more difficult question is whether Bigbee is entitled to statutory

tolling through April 18, 2005, when, after granting his Petition for Leave to File Nunc Pro Tunc,

the Pennsylvania Supreme Court denied his Petition for Allowance of Appeal.

The United States Supreme Court has held that a state habeas application is considered

pending during "the time between a lower state court's decision and the filing of a notice of

appeal to a higher state court."  Id. at 217.  Carey v. Saffold, 536 U.S. 214, 217 (2002).  "[A]n

application is pending as long as the ordinary state collateral review process is 'in continuance' –

i.e., 'until the completion of' that process." Id. at 219-20.  The ordinary process for seeking

review in the Pennsylvania Supreme Court is by petition for allowance of appeal.[4]  See Pa.

R.A.P. 1112. Pennsylvania Rule of Appellate Procedure 1113 provides that a petition for

allowance of appeal to the Pennsylvania Supreme Court must be filed within 30 days of the entry

of the order of the Superior Court to be reviewed.  See Pa. R.A.P. 1113.  Ordinarily, an

application filed after the deadline would not be considered timely and the PCRA case would no

longer be pending after 30 days had passed since the Superior Court's decision.

In this case, however, the Pennsylvania Supreme Court chose to treat Bigbee's Petition

for Allowance of Appeal as if it had been timely filed.  Bigbee and his counsel were unaware of

the Superior Court order dismissing his PCRA petition until well after the 30 day period had

expired, and petitioned for allowance of appeal soon after discovering that the order existed.

---

[4] Pennsylvania Rule of Appellate Procedure 1112 states that "Allowance of an appeal from a final order of the Superior Court or the Commonwealth Court may be sought be filing a petition for allowance of appeal with the Prothonotary of the Supreme Court within the time allowed by Rule 1113."  Pa. R.A.P. 1112(c).

Upon receiving the late petition, the Supreme Court instructed Bigbee to "state, with specificity, the reasons why an appeal was not filed within the thirty day appeal period." (Pa. S. Ct. Letter to Thomas J. Wagner (June 11, 2004).)  Bigbee's counsel submitted a Petition for Leave to File Petition for Allowance of Appeal Nunc Pro Tunc, reciting the facts relating to Bigbee's change of counsel and how the Superior Court had misled him into thinking that the case was still pending before the Superior Court.  (See Pet. for Leave to File Pet. for All. of App. Nunc Pro Tunc.)  He also filed an accompanying Memorandum of Law that cited extensively to Commonwealth v. Stock, 679 A.2d 760, 764 (Pa. 1996) for the proposition that "an appeal nunc pro tunc is intended as a remedy to vindicate the right to an appeal where that right has been lost due to certain extraordinary circumstances."  Counsel also argued that a breakdown in the court's operation was responsible for the delay.  See Commonwealth v. Horner, 296 A.2d 760, 762 (1972) (holding that serving of an inaccurate notice was a breakdown in the court's operation sufficient to allow an otherwise untimely appeal to be filed nunc pro tunc).  Apparently Bigbee's argument persuaded the Supreme Court that extraordinary circumstances merited granting his Petition for Leave to File Nunc Pro Tunc.  (See Comm. v. Bigbee, 101 MM 2004 (per curiam) (Pa. Aug. 24, 2004).)

The Third Circuit has directed that "when applying AEDPA, 'we must look to state law governing when a petition for collateral relief is properly filed' and 'defer to a state's highest court when it rules on an issue.'" Merritt v. Blaine, 326 F.3d 157, 165 (3d Cir. 2003) (citing Fahy v. Horn, 240 F.3d 239, 243-44 (3d Cir. 2001)).  In this case, Pennsylvania's highest court waived its own Rule of Appellate Procedure and allowed Bigbee to file an otherwise untimely petition for allowance of appeal as if it were timely and had been filed within 30 days of the Superior

Court decision.[5]   Because the Pennsylvania Supreme Court then considered Bigbee's Petition for Allowance of Appeal to be timely, it must be considered timely under AEDPA, tolling the federal statute of limitations under 28 U.S.C. § 2244(d)(2).

My research has not revealed any binding cases addressing the application of AEDPA's statutory tolling provision to a state collateral proceeding in which a state's highest court allows an appeal nunc pro tunc.  In Douglas v. Horn, 359 F.3d 257, 262 (3d Cir. 2004), the Third Circuit held that a nunc pro tunc petition in PCRA proceedings before the Pennsylvania Supreme Court "was not properly filed, and thus did not toll the [AEDPA] clock."  The request to file nunc pro tunc in Douglas, unlike Bigbee's request, had been denied by the Pennsylvania Supreme Court. Id. at 259.  In dicta prior to Douglas, the Third Circuit had noted that an *un*successful petition to appeal nunc pro tunc was improperly filed as a matter of state law, and therefore could not toll AEDPA's statute of limitations. See Swartz v. Meyers, 204 F.3d 417, 424 n.6 (3d Cir. 2000); Brown v. Shannon, 322 F.3d 768, 775 n.5 (3d Cir. 2003).  Courts within this District have also found that *denial* of a petition for allowance of appeal nunc pro tunc means that there was no properly filed petition pending, and statutory tolling is thus unavailable.  See Huang v. Nish, 2006 WL 2177948 at *5 (No. 05-CV-6754) (E.D. Pa., Jul.31, 2006) (Pennsylvania Superior Court's denial of a nunc pro tunc petition for allowance of appeal meant "the time during which [it] w[as] pending in state court is not tolled for AEDPA purposes"); Grave v. Folino, 2006 WL 1371188 at *2 (No. 05-CV-6294) (E.D. Pa. 2006) (unsuccessful petition for leave to file petition

_____

[5] The Pennsylvania Supreme Court granted permission for Bigbee to petition for allowance of appeal nunc pro tunc.  Black's Law Dictionary (8th ed. 2004) defines "nunc pro tunc," Latin meaning literally "now for then," as "[h]aving retroactive legal effect through a court's inherent power."

for allowance of appeal nunc pro tunc did not toll AEDPA statute of limitations); Maraj v. Gillis, 2004 WL 2429847 at *3 (04-CV-1544) (E.D. Pa. 2004); Stokes v. Vaughn, 293 F. Supp. 2d 525 (E.D. Pa. 2003) (aff'd Stokes v. Vaughn, 132 Fed. Appx. 971, 973 (3d Cir.2005)).[6]  In each case, the courts reasoned, either explicitly or implicitly, that the nunc pro tunc petition in question could not toll the statute of limitations because a Pennsylvania court found it untimely and thus improperly filed.

In the cases just cited, federal courts respected the Pennsylvania courts' finding that nunc pro tunc petitions were improperly filed by refusing to apply statutory tolling to the time in which the petitions were pending.  Those decisions are supported by the Supreme Court's reasoning in Carey that § 2244(d)(2)'s "tolling rule is designed to protect the principles of 'comity, finality, and federalism,' by promoting 'the exhaustion of state remedies while respecting the interest in the finality of state court judgments.'" Carey, 536 U.S. at 220 (citation omitted).  The Third Circuit noted that recognizing as properly filed for AEDPA purposes motions that are not recognized under state law "might seem to disrespect the state's decision regarding the proper procedures for challenging state court judgments." Brown, 322 F.3d at 775 n.5.  In the present case, because the Pennsylvania Supreme Court considered Bigbee's Petition for Allowance of Appeal as if it were timely, it might seem to disrespect the state's decision *not* to recognize the petition as properly filed.

In Bigbee's case, the state collateral review process was "in continuance" for the entire

---

[6] In its non-precedential opinion affirming Stokes, the Third Circuit wrote that "[t]he Pennsylvania Supreme Court's denial of the Permission Petition without comment indicates that it did not accept Stokes's petition for allowance of appeal *nunc pro tunc* as properly filed under state law, and thus the pendency of the Permission Petition did not result in statutory tolling." Stokes,

time between the filing of his first PCRA petition and the Pennsylvania Supreme Court's denial of his Petition for Allowance of Appeal on April 18, 2005.  In <u>Carey</u>, the Supreme Court considered the claim of a habeas petitioner who filed a state habeas petition in California, appealed it to the State Court of Appeal, and then took four and a half months to file an application for review in the California Supreme Court because he had not been notified of the Court of Appeal's decision for several months.  <u>Carey</u>, 536 U.S. at 217-18, 226.  The California Supreme Court denied his petition "on the merits and for lack of diligence."  <u>Id.</u> at 225.  The United States Supreme Court wrote that if the California Supreme Court's denial were based on the untimeliness of the petition, even if "its timeliness ruling was 'entangled' with the merits," the application would not be considered pending during that period.  <u>Id.</u> at 226.  In the present case, the Pennsylvania Supreme Court considered the timeliness and the merits of Bigbee's appeal in separate decisions, so there was no entanglement.  Bigbee's first petition, which was granted, addressed only the timeliness of the appeal.  Bigbee's second petition, which was denied, addressed only the merits.  Therefore until Bigbee's PCRA petition "achieved final resolution through the State's post-conviction procedures" by the Supreme Court's denial on April 18, 2005, it remained "pending" under <u>Carey</u>.  536 U.S. at 219.

  At the time the Supreme Court denied Bigbee's Petition for Allowance of Appeal, he had 111 days remaining in his one-year period in which to file a federal habeas petition under AEDPA.  Bigbee filed the present petition 46 days later, on June 3, 2005, well within the statute of limitations.  Because statutory tolling applies and the petition is not time-barred, it is unnecessary to consider whether Bigbee is entitled to equitable tolling.

**B.**     __Exhaustion and Procedural Default__

Bigbee presents two claims in his petition for federal habeas relief: (1) that his guilty plea was unlawfully induced because it was not knowingly and intelligently given, and (2) that his counsel was ineffective because she believed him to be guilty.   A petitioner in state prison "must exhaust his state court remedies before a federal court may grant him habeas relief." Lambert v. Blackwell, 387 F.3d 210, 231 (3d Cir. 2004).  Exhaustion requires a petition to fairly present a claim's "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999). Bigbee's first federal claim, regarding the voluntariness of his guilty plea, was fairly presented to the state courts.[7]   Bigbee's second federal claim, that his counsel was ineffective because she believed him guilty, was not.  The "factual substance" of Bigbee's second claim is that his attorney thought he was guilty when she advised him to plead guilty, thereby ensuring that he would not vigorously represent him.  (See Pet. at 9.)  The ineffective assistance claims that Bigbee presented to the state courts in his PCRA petition was premised on counsel "failing to appeal the question of whether his plea was knowingly and intelligently entered," and whether Bigbee was properly advised of the defenses available to him, completely different factual bases. A claim based on counsel thinking Bigbee was guilty was never presented to the state courts and thus is unexhausted.

If a petition contains exhausted and unexhausted claims, a federal habeas court must generally dismiss the petition and allow the petitioner to return to state court to exhaust the

---

[7] This claim corresponds to the claim Bigbee presented to the Superior Court on appeal of the trial court's denial of his PCRA petition.

unexhausted claims.  Rose v. Lundy, 455 U.S. 509, 522 (1982).  The reasoning behind the rule is that "the interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims."  Rhines v. Weber, 544 U.S. 269, 273 (2005) (citing Rose, 455 U.S. at 518-19).  Dismissal of a partially exhausted petition is not always required, however.  If an unexhausted claim has not been presented to the state courts, "but further state-court review is clearly foreclosed under state law, exhaustion is excused on the ground of futility."  Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001).  The futility exception "eliminates the procedural pretense of requiring a federal habeas petitioner to return to an unavailable state forum for nonexistent relief."  Lines v. Larkins, 208 F.3d 153, 166 (3d Cir. 2000).

In this case, it would be futile for Bigbee to return to the Pennsylvania courts to present his claim of ineffective assistance premised on his attorney's belief that he was guilty.  Bigbee's time for seeking direct review expired thirty days after he was sentenced, on June 20, 1999, so raising the issue on direct appeal is foreclosed.  Nor can he present his present claim of ineffective assistance through another PCRA petition, because it would be barred as untimely.  PCRA petitions must be filed within one year of the date the judgment becomes final unless the petitioner can prove that the failure to raise the claim previously was (1) the result of interference by government officials in violation of the Constitution or laws of Pennsylvania or the United States; (2) the result of newly discovered evidence that could not have been ascertained earlier by due diligence; or (3) caused by a constitutional right subsequently recognized by the Supreme Court of Pennsylvania or the United States and held to apply retroactively.  See 42 Pa. C.S. § 9545(b)(1).  If the petition falls within one of the exceptions, it must be filed within 60 days of the date that the claim could have been presented.  Id. § 9545(b)(2).  The time limits are

jurisdictional and cannot be extended except through one of the statutorily enumerated exceptions.  Comm. v. Fahy, 737 A.2d 214, 222 (1999).  In this case, Bigbee learned that his counsel believed him to be guilty at the PCRA hearing held on October 1, 2002.  Because he did not file a second PCRA petition within 60 days of the hearing, the Pennsylvania courts would consider the claim barred by the PCRA's timeliness requirements, and the claim is procedurally defaulted.

Procedurally defaulted claims are prohibited from federal review on the merits "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  In order to show "cause" to excuse the procedural default, the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Werts v. Vaughn, 228 F.3d 178, 193 (3d Cir. 2000) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  There are no allegations in this case that any external factor prevented Bigbee from complying with the PCRA's timeliness rule by raising his claim within 60 days of the October 2002 hearing at which his counsel testified that she thought he was guilty.

The "miscarriage of justice" exception to procedural default applies "only in extraordinary cases, i.e., 'where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  Id. (quoting Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996)).  Bigbee alleges that his counsel's belief that he was guilty deprived of effective assistance of counsel.  At the PCRA hearing, Bigbee's counsel testified that she had advised him to plead guilty both because she believed it to be in his best interests to avoid the risk of a first

19

degree murder conviction, and because she "believed that he was guilty of third degree murder." (Tr. 10/1/02 at 43.)  To establish a miscarriage of justice, Bigbee would have to prove that it is more likely than not that no reasonable juror would have convicted him of third degree murder.  See Schlup v. Delo, 513 U.S. 298, 326 (1995).  The prosecution had ready sufficient evidence for a juror to find Bigbee guilty of third degree murder, including Bigbee's own admission that he killed Greenwood, hid her body by dumping it on a rural spot, and burned her purse, as well as testimony from a neighbor who heard screaming that cut off abruptly, and another prostitute who was assaulted by Bigbee under similar circumstances.  Bigbee cannot establish that his conviction for third degree murder based on his guilty plea was a miscarriage of justice sufficient to overcome the procedural default of his second claim.

The Third Circuit has directed that when otherwise unexhausted claims are now procedurally barred under state law, "[t]he district court may not go to the merits of the barred claims, but must decide the merits of the claims that are exhausted and not barred.  Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993), citing Teague v. Lane, 489 U.S. 288 (1989).  Therefore I will address only the merits of Bigbee's claim that his guilty plea was invalid.


**C.    Petitioner's Claim for Relief**

Bigbee's only exhausted and not defaulted claim is that his guilty plea was "unlawfully induced" because it was not knowingly and intelligently entered.  (Pet. at 9.)  Specifically, Bigbee alleges that he repeatedly asserted his innocence and that the meaning of malice necessary to support the charge of third degree murder "was not explained to [him] in terms that would be understandable to a person not of the legal profession."  (Id.)  Although Bigbee does not specify

the constitutional grounds for this claim in his petition, I will assume that it is an ineffective assistance claim because those are the grounds which he presented it to the state courts, and thus it is the only claim that has been exhausted.  The respondents argue that the record demonstrates that petitioner understood the charges against him, including the element of malice, and entered his guilty plea knowingly, voluntarily and intelligently.

To establish a claim of ineffective assistance of counsel, a federal habeas petitioner must demonstrate both that his counsel's representation "fell below an objective standard of reasonableness" and that the deficiency resulted in prejudice to the petitioner.  Strickland v. Washington, 466 U.S. 668, 688-94 (1984).  The reasonableness of counsel's conduct must be determined on the facts of the particular case, viewed as of the time of counsel's conduct and "in light of all the circumstances."  Id. at 689-90; see also Jacobs v. Horn, 395 F.3d 92, 106 (3d Cir. 2005).  In order for a defendant who challenges a guilty plea to satisfy the prejudice requirement, "he must demonstrate that there is a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Weeks v. Snyder, 219 F.3d 245, 256 (3d Cir. 2000) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

In this case, Bigbee is unable to show that his counsel's representation fell below an objective standard of reasonableness.  When Bigbee entered a guilty plea to third degree murder, he told the trial judge that he had had a full opportunity to discuss his case with his attorney and that he was satisfied with her advice and representation.  (Tr. 3/11/99 at 8.)  When the judge asked Bigbee whether he had "any questions about what you're doing, or the effect of the plea of which you're entering" Bigbee replied "I'm pretty clear from Ms. Steinen."  (Id. at 9.)  At the PCRA hearing, Bigbee's trial counsel testified that she had counseled Bigbee on the evidence he

would face at trial, and had discussed the theories of imperfect self-defense and voluntary manslaughter with him.  (Tr. 10/1/02 at 28-30.)  Bigbee went over a written guilty plea colloquy with his attorney and affirmed that he discussed the charges with his lawyer, was satisfied with her representation, had had all of his questions answered, and understood the full meaning of the charges.  (Guilty Plea Colloquy, Resps.' Ans. App. D.)

There is no evidence in the record to show that Bigbee's attorney was unreasonable in recommending to him that he plead guilty to third degree murder.  "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill v. Lockhart, 474 U.S. 52, 56 (1985).   Bigbee was facing a first degree murder charge, had confessed to killing the victim, and the trial court had ruled his "subsequent aggravated assault conviction against a different drug prostitute" admissible.  (Tr. 10/1/02 at 28-30.)  Bigbee's attorney testified that she and Bigbee were "not feeling confident that voluntary manslaughter was any more likely than first degree murder."  (Id. at 28.)  First degree murder in Pennsylvania carries a mandatory life sentence if a death sentence is not imposed.  See 18 Pa. C.S. § 1102(a)(1).  Bigbee was told that he could be sentenced to a maximum of 20 years for pleading guilty to third degree murder. Under the circumstances, Bigbee made a voluntary and intelligent choice to avoid the risk of a mandatory life sentence by pleading guilty to third degree murder.  He has failed to satisfy the first prong of the Strickland test by showing that his counsel's performance was deficient, so it is unnecessary to consider the prejudice prong.

Aside from ineffective assistance, Bigbee claims that his plea is invalid because he did not understand the meaning of "malice."  Under Pennsylvania law, a third-degree murder

22

conviction requires proof that the defendant killed another person "with malice aforethought," which "comprehends not only a particular ill-will, but . . . [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty."  Comm. v. Santos, 876 A.2d 360, 363 (Pa. 2005). Pennsylvania courts "have consistently held that malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for 'an unjustified and extremely high risk that his actions *might* cause death or serious bodily harm.'" Id. (citing Comm. v. Young, 431 A.2d 230, 232 (Pa. 1981)).  In his written plea colloquy, Bigbee admitted that he killed the victim, "dumped her body and burned her purse."  (Written Plea Colloquy, Resps.' Ans. App. D.)  When Bigbee described the victim's death as an "accident" at his sentencing, the trial court went over the concept of malice with him:

> THE COURT:           Mr. Bigbee, I just want to be sure we're clear here.  You have offered a plea of guilty to third degree murder.
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:           But in shorthand, that's a killing with malice.  And it's not an unintentional killing, and it's not a killing in self-defense.   Do you understand –
>
> THE DEFENDANT:  Now, I do.
>
> THE COURT:           –what you pleaded guilty to?
>
> MS. STEINEN:         Did you understand that at the time you pled guilty?
>
> THE DEFENDANT:  Yeah, I guess.
>
>                                        . . . .
>
> THE COURT:           What you've pleaded guilty to does not require that you planned it ahead of time, but it does mean at the time you did it, you acted

> with malice, which is a legal term meaning hardness of heart, recklessness of consequences, that sort of thing.  That's what you're acknowledging.

THE DEFENDANT:  Oh, okay.

THE COURT:          Am I correct in assuming that's what you're acknowledging?

THE DEFENDANT:   That's what the charges are.  That's what I pled to.

(Tr. 5/21/99 at 16-17.)  This exchange, as well as Bigbee's written colloquy and the testimony from his attorney, demonstrates that Bigbee understood the charge that he was pleading guilty to, including the element of malice.

The Constitution requires that the defendant "enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." U.S. v. Ruiz, 536 U.S. 622, 629 (2002) (quoting Brady v. U.S., 397 U.S. 742, 748 (1970).  Bigbee has failed to show that his counsel was ineffective in advising him to plead guilty to third degree murder to avoid a first degree murder conviction.  Further, Bigbee was aware that he could receive a 20 year prison sentence for pleading guilty, and that he was giving up his trial rights.  (See Tr. 3/11/99 at 6-7.) Bigbee may not now invalidate his plea by alleging that it was not knowing, intelligent, or voluntary.


III.    CONCLUSION

Bigbee's federal habeas petition was timely filed because of the application of statutory tolling.  Bigbee's claim of ineffective assistance based on his trial counsel's belief that he was guilty is unexhausted but procedurally defaulted, and thus ineligible for federal habeas review.

24

Bigbee's challenge to his guilty plea fails on the merits.  Therefore Bigbee is not entitled to habeas corpus relief.  Bigbee has not made a substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability.  An appropriate order follows.

## ORDER

**AND NOW**, this _____ day of August 2006, upon consideration of the parties' filings

including petitioner's objections, and after careful review of the Report and Recommendation of

the United States Magistrate Judge, it is **ORDERED** that:

1.  Petitioner's "Corrected Petition for Leave to File Petition for Allowance of Appeal Nunc Pro Tunc" and "Petition for Allowance of Appeal Nunc Pro Tunc," filed in the Supreme Court of Pennsylvania (302 MT 2004) by Thomas J. Wagner, Esq., be made part of the record of this case.

2.  The Report and Recommendation (Doc. #6) is **APPROVED** as to its recommendation to deny the petition.  The approval of the R&R is subject to the conclusions as set forth in the accompanying memorandum.

3.  The petition for a writ of habeas corpus is **DENIED**.

4.  There is no basis for the issuance of a certificate of appealability.


      S/Anita B. Brody

ANITA B. BRODY, J.


Copies **VIA ECF** on _____ to:     Copies **MAILED** on _____ to:


O:\ABB 2006\Bigbee habeas opinion.wpd

26